IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN BAEZ-RODRIGUEZ,<br><br>Defendant. | CRIMINAL NO. 06- 252 (CCC) |

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

Defendant Jonathan Baez-Rodríguez ("Baez") filed a Motion to Suppress Evidence, which was referred by the Court to the undersigned Magistrate Judge, claiming that his post-arrest custodial interrogation by FBI Special Agent Richard Gilbert ("SA Gilbert") and Task Force Agent Pablo Rivera ("TFO Rivera") was made without advising him of his Fifth Amendment rights in violation of Miranda v. Arizona, 384 U.S. 436 (1966). The government filed its reply in opposition claiming defendant Baez's interview was conducted after he voluntarily waived his Miranda rights, and thus, his statements were not in violation of his Fifth Amendment rights. (**Docket Nos**. **34, 35, 37 and 39**).

On November 28, 2006, an evidentiary hearing was held, wherein the testimonies of SA Gilbert, TFO Rivera and defendant Baez were presented.

## FACTUAL BACKGROUND

**Testimony of SA Gilbert:**

The government presented the testimony of SA Gilbert which may be summarized as follows:

SA Gilbert has been a special agent for the FBI for six (6) years. On July 28, 2006, at approximately 9:00 am, FBI agents and Puerto Rico Police officers went to defendant's house to execute an arrest warrant for interference with commerce by threat or violence in violation to Title 18, United States Code, Section 1951. See Exhibit 1. The normal FBI procedure in arresting a person was followed to wit, several agents knocked on defendant's residence, called defendant, and he came out. Defendant did not resist arrest and he was taken to the FBI Office located at the General Services Administration ("GSA") Building near the MDC in Guaynabo, Puerto Rico. Defendant showed the agents the way out from the area where he lived because some roads were blocked. Upon arrival at the FBI GSA Office, at approximately 10:00 am, defendant was taken to an interview room and advised of his rights and the interview began after defendant waived his rights. Defendant's rights were read by TFO Rivera to defendant in Spanish. Defendant voluntarily signed the waiver of rights in Spanish, which was admitted as Exhibit 2. The advise and waiver of rights form (Exhibit 2) was physically provided to defendant who read the form and signed the waiver acknowledging he read the form, understood his rights and waived them.

Defendant's interview lasted about two (2) hours. After the interview, the agents went with defendant to a residence of another individual whom defendant did not recall the address but knew how to get there.

On cross-examination, SA Gilbert indicated he is not aware of the time of the day in which defendant was handed over to the United States Marshal Service after the initial appearance was held. Defendant's interview lasted until 12:30 pm. Two (2) or three (3) agents cuffed defendant at the time of his arrest but approximately twenty five (25) FBI agents and twenty five (25) Puerto Rico Police officers participated in the arrest. All officers were armed.

On re-direct examination, SA Gilbert stated that no questions were asked to defendant before he was read his rights and he waived them. Defendant's statements were provided after he was advised of his rights.

**Testimony of TFO Rivera:**

The government presented the testimony of TFO Rivera which may be summarized as follows:

TFO Rivera has been a task force agent with the FBI for seven (7) years. On July 28, 2006, he participated in executing an arrest warrant against defendant at approximately 9:45 am. The agents approached defendant's house, called out and defendant came out and was arrested. Defendant was placed inside a vehicle and transported to the FBI GSA Office. Upon arrival, defendant was taken into an interrogating room and he was offered drinks and food. Defendant was read his rights first in English and then in Spanish. Defendant was provided with

the advise and waiver of rights which he read to himself, he initialed every paragraph and signed the form. Then, defendant's interview was conducted for about two (2) hours. Defendant offered and took the agents to another individual's house in Bayamón. Afterwards, defendant was handed over to other agents. Defendant cooperated with the agents after he signed the waiver of rights.

On cross-examination, TFO Rivera was shown an FBI 302 in which it is stated that defendant was arrested at 9:45 am. TFO Rivera indicated he was not present at time of arrest; he only transported defendant to the FBI GSA Office. The 302 form was admitted as Exhibit A.

On re-direct examination, TFO Rivera testified that, pursuant to paragraph number 1 of Exhibit A, defendant was arrested at 9:45 am on July 28, 2006 and he was immediately transported to the FBI GSA Office. Upon arrival at 10:10 am, defendant was offered food and at 10:20 am, defendant was advised of his rights. TFO Rivera testified that defendant provided the information subsequent to being advised of his rights.

**Testimony of defendant Baez:**

The defense presented the testimony of defendant Baez which may be summarized as follows:

Defendant identified his signature in Exhibit 2 and testified he signed the waiver of rights (Exhibit 2) after the agents asked him questions.

On cross-examination, defendant stated he knows how to read and write. Defendant admitted he did not understand his rights at first because they were provided to him in English but he understood his rights afterwards when they were provided to him in Spanish. Defendant recognized he signed the advise and waiver of rights and he voluntarily waived his Miranda rights after Exhibit 2 was given to him. Defendant admitted he was interviewed by the agents but for less than two (2) hours. Defendant stated that, pursuant to Exhibit 2, he signed the same at 10:25 am but he was not looking at his watch at the time.

Upon questions of the undersigned, defendant admitted the initials on Exhibit 2 next to each paragraph are his initials. Defendant re-instated his testimony that his rights and the waiver form were provided to him after he was interviewed.

On re-cross examination, defendant admitted he was treated well by the agents and he was offered food and drinks. Defendant testified he did not feel threatened.

## LEGAL DISCUSSION

Defendant Baez' arrest was made pursuant to an arrest warrant issued by this Court which has not been challenged in any way by the defense. See Exhibit 1. Thus, for purposes of the suppression issue, defendant's arrest was based on trustworthy information that he had committed or was committing an offense. it is now appropriate to discuss the voluntariness aspect of the defendant's post-arrest statements made during custodial interrogation, which he now seeks to suppress.

United States of America v. Jonathan Baez-Rodríquez
Criminal No. 06- 252 (CCC)
Report and Recommendation
Page 6

When a defendant is considered to be under custody, in determining if a defendant's statements to law enforcement officers is admissible in evidence, the court must assess whether the statement was secured by government agents following constitutional and procedural safeguards.

The determination of whether a suspect is in custody demands the trier to utilize an objective standard. *See* United States v. Masse, 816 F.2d 805, 809 & n. 5 (1st Cir. 1987). Until an officer acts to exert some type of restraint a suspect cannot reasonably believe his freedom is restrained. United States v. McDowell, 918 F.2d 1004, 1008 (1st Cir. 1990). A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave". United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877 (1980); McDowell, 918 F.2d at 1008.

From the facts developed through all the witnesses' testimonies and the totality of the circumstances analysis, this Magistrate Judge considers that defendant Baez was under custody after he was arrested at his residence pursuant to the arrest warrant and transported to the FBI GSA Office. No statements were made by defendant while he was transported. Accordingly, there is no suppression issue for the time period before defendant arrived at the FBI GSA Office.[1]

---

[1] The suppression of involuntary statements is not required unless the person was "under arrest or other detention" at the time he made the statement. 18 U.S.C. § 3501(d). United States v. Guerrero 114 F.3d 332, 339 (1st Cir. 1997).

Defendant avers the statements to be suppressed were obtained while under the custody of the FBI agents upon arrival at the FBI GSA Office. Defendant claims his post-arrest custodial interrogation by FBI SA Gilbert and TFO Rivera were made without advising him of his Fifth Amendment rights in violation of Miranda.

A.   Miranda Warnings in General.

The provision of warnings under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966), although not totally dispositive, is an "important factor," as are "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances ... and, particularly, the purpose and flagrancy of the official misconduct." Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 2261-62 (1975). As such, circumstances attending to statements provided by a defendant while holding a rifle over him while he was still handcuffed, were considered to be one at the breachway and led the trial court to suppress the statements as involuntary. Still, the court also ruled that law enforcement actions of removing him to the station, rereading him his Miranda rights, and then questioning him later that same evening in an atmosphere when he appeared to be relaxed, fully composed, and in an open cell, would not render the statements coercive or otherwise inadmissible. United States v. Ayres, 725 F.2d 806, 810 (1st Cir. 1984).

In Miranda, the Supreme Court stated that 'prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444.

In <u>Miranda</u>, the Supreme Court further held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Unless the government shows that the proper warnings and waiver were given, any statements made by the accused are inadmissible in evidence, unless a defendant is shown to have waived his rights under <u>Miranda</u> which "is made voluntarily, knowingly and intelligently." <u>Miranda</u>, 384 US at 444. Consequently, a statement obtained by government agents as a result of custodial interrogation must be suppressed unless the government can demonstrate that the defendant was properly advised of his rights and that he voluntarily, knowingly and intelligently waived those rights. <u>United States v. Palmer</u>, 203 F.3d 55, 60 (1st Cir. 2000).

<u>Miranda</u> warnings need not follow any particular format, so as to avoid a ritualistic formalism requirement, as long as the substance of the rights involved is adequately conveyed. <u>California v. Prysock</u>, 451 U.S. 1301, 101 S.Ct. 1773 (1981).  Even an unsigned statement goes to its weight and credibility not to its admissibility when it is proven that the defendant understood and adopted the substance of such statement.  <u>Wong Sun v. United States</u>, 371 U.S. 471, 83 S.Ct. 407 (1963).

For a <u>Miranda</u> waiver to be knowing and intelligent, it must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Moran v. Burbine</u>, 475 U.S. 412, 421, 106 S.Ct. 1135 (1986).

However, the suspect need not "know and understand every possible consequence of a waiver of the 5th Amendment privilege." Colorado v. Spring, 479 U.S. 564, 574 (1987). Rather, he need only be aware that "he may choose not to talk to law enforcement officers, and to talk only with counsel present, or to discontinue talking at any time." *Id.*[2] In adhering to said legal principles, a statement is not considered involuntary unless it is procured by police coercion or trickery. Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, (1986), *accord*, United States v. Byram, 145 F.3d 405, 407 (1st Cir. 1998); United States v. Santos, 131 F.3d 16, 19 (1st Cir. 1997).

Whether defendant has validly waived his rights is a question to be determined by examining the totality of the circumstances in which said statement was procured and given. Failure to warn a defendant of his rights is, when combined with police coercion, is deemed significant to a finding of involuntariness. Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485 (1971).

When challenged statements are made by a defendant after arrest, "the degree of free will exercised by the defendant is not irrelevant in determining the extent to which the basic purpose of the exclusionary rule will be advanced by its application." United States v. Ceccolini, 435 U.S. 268, 276, 98 S.Ct. 1054 (1978) (*citing* Wong Sun, 371 U.S. at 491). After receipt of the Miranda warnings, a defendant's "choice whether to exercise his privilege to remain silent should ordinarily be viewed as an act of free will." United States v. Esquilín, 208 F.3d 315, 319

---

[2] The content of Exhibit 2, which need not be translated precisely because one of the issues on knowledge and voluntariness is that it was presented to the defendant in the Spanish language, the one that he can fully understand orally and in writing, clearly fulfills *Miranda* requisites.

(1st Cir.2000) (*quoting* Oregon v. Elstad, 470 U.S. 298, 310-11, 105 S.Ct. 1285 (1985)); United States v. Paradis, 351 F.3d 21, 34 (1st Cir. 2003).  "The Supreme Court has confined the voluntariness concept by holding that only [statements] procured by coercive official tactics should be excluded as involuntary." Byram, 145 F.3d at 407 (*citing* Connelly, 479 U.S. at 167).

In recent years, the Supreme Court has confined the voluntariness concept by holding that only confessions procured by coercive official tactics should be excluded as involuntary. Connelly, 479 U.S. at 167. *See* United States v. Santos, 131 F.3d 16, 19 (1st Cir. 1997). "Free choice" is no longer a touchstone and the Supreme Court ruled in Connelly that a volunteered confession was admissible even if the product of a psychosis that undermined the suspect's ability to make a free and rational choice. *See* Byram, 145 F.3d at 407-408.

As such, the voluntariness of a statement would depend on whether the will of the defendant was overborne to consider that the statement was not his free and voluntary act. This is to be resolved in light of the totality of the circumstances. United States v. Jackson, 918 F.2d 236, 241 (1st Cir.1990).  *See* United States v. Marenghi, 109 F.3d 28, 33 (1st Cir. 1997).[3]

B.    Application to this Case.

We first note that defendant Baez' testimony was limited to stating that his rights were provided to him **after** he was interrogated.  The law enforcement agents' testimonies and the documentary evidence presented are considered more believable than defendant's self-serving version.  As such, defendant's grounds seeking suppression seem to rest solely on questions of

---

[3] Jury may still assess relevant evidence on the issue of voluntariness under the circumstances. *See* United States v. Fera, 616 F.2d 590, 594 (1st Cir. 1980); United States v. Cowden, 545 F.2d 257 (1st Cir. 1976).

credibility at the suppression hearing. However, the assessment of the evidence presented at the suppression hearing before this Magistrate Judge rests also on historical facts, reasonable conclusions from the evidence admitted, in addition to the credibility afforded to law enforcement agents' testimonies and the documentary evidence.

After evaluating the testimonies of SA Gilbert, TFO Rivera and defendant, including their responsiveness and their demeanor on the stand, this Magistrate Judge finds, pursuant to the preponderance of the evidence and considering the totality of the circumstances, the account of SA Gilbert and TFO Rivera[4] to be more credible and accords little weight to defendant Baez' testimony under these circumstances.[5] Thus, this Magistrate Judge finds defendant Baez gave the challenged statements voluntarily on July 28, 2006, **after** having been read the Miranda warnings and having knowingly signed the proper waiver (Exhibit 2).

This Magistrate Judge finds defendant Baez was advised of his constitutional rights in accordance with Miranda, 384 U.S. 436, while under the custody of the federal agents and any post-arrest statements were voluntarily produced after having knowledge and understanding of his rights, as testified by SA Gilbert and TFO Rivera. The testimonies of both SA Gilbert and TFO Rivera were consistent as to the fact that defendant was verbally advised of his rights in Spanish by TFO Rivera, he (defendant) read in Spanish the advise of rights, initialed every

---

[4] No efforts were made by defense counsel to impeach in any way the testimonies of both SA Gilbert and TFO Rivera.

[5] The findings of the court after a hearing on a pretrial motion to suppress are binding unless they are clearly erroneous. United States v. de Jesús-Ríos, 990 F.2d 672, 677 (1st Cir.1993). United States v. Hernández-Rodríguez, 443 F.3d 138 (1st Cir. 2006) (credibility determinations in a report and recommendation should not be rejected by the Court without hearing the evidence examined by the Magistrate Judge).

paragraph of the form and voluntarily signed the waiver (Exhibit 2) **prior** to his interview. Thus, defendant Baez knew his rights when he was orally advised of same and after reading them to him in Spanish and having understood, according to his own testimony, as well as the testimony of SA Gilbert and TFO Rivera, a written admonishment and waiver of rights in the Spanish language. Exhibit 2. Moreover, defendant Baez admitted he knows how to read and write and has not argued that he lacked the mental capacity to understand his rights and the evidence shows defendant Baez displayed the required mental capacity. As such, there is no issue of voluntariness or coercion to elucidate and the credibility as to whether the statements were or not made would rest on the trier of fact. *See* United States v. Tibolt, 72 F.3d 965, 972 (1st Cir. 1995)(noting that factual findings and credibility determinations relating to suppression issues are normally for the trier of fact).

The testimony of SA Gilbert that defendant Baez was advised of his rights **before** being questioned and that his statements were voluntary, is consistent with the testimony of TFO Rivera that before asking any questions to Baez he was provided with the proper form of advise of rights and he knowingly signed the waiver (Exhibit 2).

Moreover, the testimonies of both SA Gilbert and TFO Rivera, as to advising defendant of his rights **before** his interview, are corroborated by Exhibit 2 and Exhibit 3 which both show defendant was advised of his rights at 10:20 am. This time frame has not been challenged by the defense and is congruent with the testimonies of the agents provided that defendant was arrested at approximately 9:45 am, taken to the FBI GSA Office Building and arriving there at

<u>United States of America v. Jonathan Baez-Rodríguez</u>
Criminal No. 06- 252 (CCC)
Report and Recommendation
Page 13

10:10 am, being offered food, and being advised of his rights at 10:20 am. Subsequently, defendant was interviewed for about two (2) hours and the interview concluded around 12:30 pm, as testified by SA Gilbert.

In addition, SA Gilbert and TFO Rivera are experienced law enforcement officers with many years of public service. Miranda warnings have become such a stable of routine police procedure, it is unlikely to this Magistrate Judge that such experienced officers, such as SA Gilbert and TFO Rivera in this case, would have omitted them before questioning Baez. See <u>United States v. Williams</u>, 2001 WL 245524 (D. Md. 2004).

Further, we note defendant was not coerced or threatened in providing his statements. Defendant admitted he was treated well by the agents and he was offered food and drinks. In fact, defendant testified he did not feel threatened.

After observing the demeanor of SA Gilbert and TFO Rivera and defendant on the stand, after considering their testimonies as a whole, this Magistrate Judge gives no credibility to defendant Baez self-serving statement that the agents interviewed him without advising him of his rights and signing the waiver of rights. Defendant Baez had the opportunity to impeach the agents, present other evidence on his behalf, challenge the government's evidence and he failed to do so. As such, except for an absolute denial of being advised of his rights prior to being interviewed, defendant Baez has not rebutted the evidence presented by the government at the suppression hearing before this Magistrate Judge which shows defendant's interview was

United States of America v. Jonathan Baez-Rodríguez
Criminal No. 06- 252 (CCC)
Report and Recommendation
Page 14

conducted **after** defendant Baez voluntarily waived his Miranda rights, and thus, his statements were voluntary and not in violation of his Fifth Amendment rights.

## CONCLUSION

Based on the documentary evidence and the witnesses' testimonies at the evidentiary hearing and having assessed their credibility, it is determined that, pursuant to the preponderance of the evidence and considering the totality of the circumstances, defendant's statements were knowing and voluntary, and thus consonant with their admissibility under the above findings and applicable law. Thus, it is recommended that the Motion to Suppress Evidence (Docket No. 34) be DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

San Juan, Puerto Rico, this 30th day of November of 2006.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE